FILED _____ LODGED
_____ RECEIVED _____ COPY

FEB 0 8 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

1  Jason Crews
   164 W. Laurel Ct
2  Gilbert, AZ 85233
   602-295-1875
3  Jason.crews@gmail.com

4

5

6                    UNITED STATES DISTRICT COURT

7                     FOR THE DISTRICT ARIZONA

8                        PHOENIX DIVISION

9

10  Jason Crews,                          Case No.:   **CV23-00250-PHX-DLR**

11              Plaintiff,

12                                         Complaint for Violations of:
    vs.
13                                         1.      NEGLIGENT VIOLATIONS OF
    National Tax Advisory Services, LLC;
14                                         THE TELEPHONE CONSUMER
    Matthew Levy;
15                                         PROTECTION ACT [47 U.S.C. §227 ET
    Vanessa Oakes;
16              Defendants.                SEQ.]

17                                         2.      WILLFUL VIOLATIONS OF

18                                         THE TELEPHONE CONSUMER

19                                         PROTECTION ACT [47 U.S.C. §227 ET

20                                         SEQ.]

21

22

23                                         DEMAND FOR JURY TRIAL

24

25

26

27                        **COMPLAINT**

28  COMPLAINT- 1

## Preliminary Statement

1.  Plaintiff Jason Crews ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2.  The Defendants in this action National Tax Advisory Services, LLC, ("National"), Matthew Levy ("Levy"), and Vannessa Oakes ("Oakes") (collectively "Defendants") orchestrated placing at least five illegal calls using an Automated Telephone Dialing System ("ATDS") and an artificial or prerecorded voice to the Plaintiff's telephone number.

3.  Plaintiff believes more calls will be uncovered during discovery.

4.  The Plaintiff did not provide his prior express written consent to receive the telemarketing solicitations at issue.

5.  As a result of the forgoing Crews experienced frustration, annoyance, irritation, wasted time, resources, interruption of work, and a sense his privacy has been invaded by Defendants.

## PARTIES

6.  Plaintiff is and was a resident of Maricopa County, Arizona at all relevant times.

7.  Defendant National is now, and at all times relevant was, a limited liability company organized and existing under the laws of the State of Florida, doing business throughout the country over the telephone.

8.  National is a "person" as the term is defined by 47 U.S.C. § 153(39).

9.  Defendant National owns, operates, and does business as "Action Tax Group", "Tax Group", "ATG", and "actiong.com" located at 450 Fairway Drive, #201, Deerfield Beach, FL and is in the business of offering tax dept resolution services to public. https://archive.is/IBRte.

COMPLAINT- 2

10. Upon information and belief Levy is or was at the time of the phone calls complained herein the owner, manager, and CEO of National.

11. Levy is a "person" as the term is defined by 47 U.S.C. § 153(39).

12. Upon information and belief Levy can be served at 13700 Marina Point Dr. Unit 525, Marina Del Ray, California.

13. Oaks is a "person" as the term is defined by 47 U.S.C. § 153(39).

14. Upon information and belief Oaks is the current owner, manager and CEO of National.

15. Upon information and belief Oaks can be served at 13305 Valley Vista Boulevard, Sherman Oaks, California.

16. At all material times, Defendants includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organization units of any kind, predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

17. At all material times, each of the Defendants was the agent and employee of every other Defendant in doing the events described and was at all times acting within the purpose and scope of such agency and employment and are vicariously liable under the theory of *respondeat superior* for the actions and inactions of their employees and contractors.

## Jurisdiction & Venue

18. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

19. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions given rise to the claim occurred in this District, as the calls to the Plaintiff were placed into this District.

20. Defendants are subject to specific personal jurisdiction because it made telemarketing calls to the Plaintiff by directing its conduct into this District.

COMPLAINT- 3

## Introduction

21. This action is brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227 and its implementing regulations contained in 47 C.F.R. § 64.1200, a federal statute and related regulations enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC* 132 S. Ct. 740, 745 (2012).

22. In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing,… can be an intrusive invasion of privacy [.]" Telephone Consumer Protection act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

## Factual Allegations

Plaintiff's Numbers

23. Plaintiff incorporates by reference all prior allegations contained in this Complaint.

24. The phone number (602) 295-XXXX ("Cell Number) belongs to the Plaintiff.

25. The Cell Number is assigned to a cellular phone used exclusively for personal residential purposes.

26. Plaintiff did not consent for prerecorded or automated messages to his Cell Number.

27. Plaintiff did not consent to telephone calls from Automated Telephone Dialing Systems ("ATDS").

28. The Cell Number has been on the National Do-Not-Call registry since November 7, 2006.

29. The Cell number is not associated with a business.

Calls to Plaintiff

30. Crews had no prior business relationship with Defendants

COMPLAINT- 4

31.     Plaintiff has received several calls from individuals representing Tax Group, all of whom concealed refused to identify the name of their company.

32.     On or about November 17, 2022, at 3:29 pm Crews received a phone call presenting caller ID (925) 474-4288.

33.     This call interrupted Crews while working.

34.     The caller identified themselves as Warren Martinez ("Martinez") calling on behalf of Tax Group, and promoted "offer the COVID 19 tax relief or the Fresh Start Program for unpaid federal or state back taxes".

35.     Having received prior calls from other individuals representing Tax Group, Crews answered Martinez's questions hoping to determine the identity of the caller and their employer.

36.     Martinez eventually transferred Crews to Jay Jordan ("Jordan").

37.     Jordan refused to provide the name of the legal name of his company in an attempt to conceal its identity and avoid responsibility for their knowing and willful disregard of the TCPA.

38.     Jay stated they had offices in "Vegas, California, New York, Florida".

39.     Eventually Jay provided his email address jjordan@actiontg.com.

40.     After verifying http://actiontg.com was an active website, Crews asked Jay to place him on his internal do-not-call list, and to send him a copy of his internal do-not-call policy.

COMPLAINT- 5

41.   Jay once again tried to conceal his identity and that of his employer when he said "Yeah. So, uh, you want me to give you the accurate email?"

42.   The Plaintiff has not received a copy of the Defendant's Do-Not-Call policy and believes no such policy existed at the time of any of the solicitations. Plaintiff believes, and therefore avers, that this is because Defendant does not maintain an internal Do-Not-Call Policy at all time material hereto.

43.   The calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as they seek to have him sign up for tax resolution services.

44.   These calls therefore qualified as telemarketing. 47 C.F.R. § 64.1200(f)(12).

45.   Calls to Crews from are summarized in the table below:

| Date | Number |
|---|---|
| 9/22/22 | (623)304-1080 |
| 10/22/22 | (888)655-1799 |
| 11/3/22 | (888)766-8773 |
| 11/17/22 | (925)474-4288 |
| 12/28/22 | (925)474-4288 |

## Defendants' Use of an ATDS

46.   The calls were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

47.   The Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis of whether an ATDS was used in violation of the TCPA centers around "whether the Defendants' employ[s] [ATDS] capacities to make automated calls," *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it

COMPLAINT- 6

held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful." Id. at 879 (cleaned up).

48. In enacting the ATDS prohibition, the Third Circuit cited favorably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns." Id. at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database. Id.

49. The system(s) Defendants used to place the calls to Plaintiff is/are an ATDS because it would be illogical to dial a number manually, have the Plaintiff answer it, and only then connect it to a human being.

50. Furthermore, audible pauses, clicks, and beeps, are hallmark indicia of ATDS systems. It supports the inference that Defendants used an ATDS, such as one which "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a pre-produced list." Facebook, 141 S. Ct. at 1171 n.7.

51. Other courts have held, post-Facebook, that allegations similar to those as here of the absence of a relationship between the parties, and the random nature of the automation device (such as the ability to randomly generate caller ID numbers), are all indicia of use of a random or sequential dialing device that gives rise to the inference at the pleadings stage that an ATDS was used to make the calls. Camunas v. Nat'l Republican Senatorial Comm., No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021).

52. No facts exist here to support the conclusion that Defendants were calling from a curated list of their past customers. By contrast to a company that dials calls en masse to multiple individuals from a list of telephone numbers (as here), a company that calls its existing customers utilizing an imported customer list does not place calls using

COMPLAINT- 7

1  an ATDS because such calling uses a database targeting existing customers' information

2  rather than computer-generated tables or lists of individuals to be called. *Panzarella*, 37

3  F.4th at 881–882.

4      53. Plaintiff is ignorant of the exact process by which the system(s) used by the

5  Defendants operate other than drawing the reasonable inference and alleging that it

6  stores or produces telephone numbers randomly or possibly sequentially based on the

7  facts ascertainable from the calls he received, as outlined above. Indeed, as at least one

8  district court explained, "The newly clarified definition of an ATDS is more relevant to

9  a summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc.*, No.

10  3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); accord

11  *Miles v. Medicredit, Inc.*, No. 4:20-cv- 01186-JAR, 2021 WL 2949565 (E.D. Mo. July

12  14, 2021).

13  <u>**Defendants' Conduct Violates the TCPA**</u>

14      54. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

15      55. Defendants made the automated calls. They either physically programmed the

16  automatic dialer to dial them or instructed others to do the same.

17      56. Defendants made at least five telemarketing calls to Plaintiff.

18      57. The Plaintiff never provided his consent or requested these calls.

19      58. Plaintiff was harmed by these calls. He was temporarily deprived of legitimate

20  use of his phone because his phone line was tied up during the automated calls and his

21  privacy was improperly invaded. The Plaintiff was charged for the calls. Moreover,

22  these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a

23  nuisance and disturbed the solitude of Plaintiff.

24  <u>**Defendants' Conduct Was Knowing and Willing**</u>

25      59. Defendants repeatedly violated the TCPA, and their employees repeatedly

26  tried to conceal Defendants identity in an effort to flout regulations and avoid

27  accountability.

28  COMPLAINT- 8

60.  Defendants knew their actions were in violation of the TCPA, and willfully continued their conduct.

## The TCPA Prohibits all Automated
## Calls To Protected Numbers

61.  The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automated telephone dialing system or an artificial or prerecorded voice, … to any telephone number assigned to a,… paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the party is charged for the call." 47 U.S.C. § 227 (b)(1)(A)(iii).

62.  Congress singled out these services for special protection because Congress realized their special importance in terms of consumer privacy and therefor protected them (as is the case of cellular phones). *Barr v. Am. Ass'n of Pol. Consultants Inc.* 140 S. Ct. 2335, 2356, (2020) (Gorsuch, J. & Thomas., concurring in part and dissenting in part).

63.  According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found, automated or prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly, and inconvenient.

64.  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(1)(3).

65.  These causes of action apply to users of any one of four protected services (pager, cellular, specialized mobile radio [i.e. radio telephony locator beacons or dispatch systems], or other radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which

called party is charged.  Lynn, Monarch Recovery Mgmt., Inc., 953 F. Supp. 2d 612, 623, (D. Md. 2013).

66.  "Non-Emergency pre-recorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A) are permissible only with the prior express consent of the called party."

67.  U.S.C. § 227(c)(2) states "No person or entity shall initiate any telephone solicitation to,... A residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government", and defines "telephone solicitation" as "The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person,... ". U.S.C. § 227(f)(15).

68.  The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

69.  In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the

written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

70. In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

71. 47 C.F.R. § 64.1200 extends 47 U.S.C. § 227 and establishes several delivery restrictions. It states, "No person or entity may ... Except as provided... initiate any telephone call ... using an automatic telephone dialing system or an artificial or prerecorded voice."

72. 47 C.F.R. § 64.1200(a)(1) specifically protects "emergency telephone line", "guest room or patient room of a hospital, health care facility, elderly home, or similar establishment", and/or "cellular telephone service". 47 C.F.R. § 64.1200(a)(2) further prohibits "Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described,... ".

73. The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.   47 C.F.R. § 64.1200(c)(2).

74. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

75. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

76. 47 C.F.R. § 64.1200(d) states "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity

COMPLAINT- 11

has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." It goes on to establish specific "minim standards":

(1) "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand …"

(2) "personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list. "

(3) "If a person or entity making a call for telemarketing purposes,… receives a request,… not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name,… and telephone number on the do-not-call list at the time the request is made…must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."

(4) "A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

(6) "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls."

**<u>Personal Liability</u>**

77. Under the TCPA, an individual such as Levy and Oaks may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia:

[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user **as well as that person**.

47 U.S.C. § 217 (emphasis added).

78. When considering individual liability under the TCPA, other Courts have agreed that an officer or individual involved in the telemarketing at issue may be personally liable under the TCPA. See, e.g. *Jackson Five Star Catering, Inc. v. Beanson,* 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute.") (cleaned up); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) (If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force").

79. Levy personally participated in the actions complained of by personally directing and authorizing the scripting of both the agents, selecting the numbers to be called, selecting, and orchestrating the calling strategy.

## Claims

## Count One

80.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

81.    Plaintiff received unsolicited phone calls to their cellular telephones.

82.    The calls played a pre-recorded voice advertising Defendants tax debt relief service.

83.    As a result of its unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop its illegal calling campaign.

84.    Multiple employees on different occasions attempted to conceal the identity of the company and continued to violate the TCPA.

85.    Defendants made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

COMPLAINT- 13

86.    If the Court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

### Count Two

87.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

88.    The telephone Number of Plaintiff is registered on the Do-Not-Call Registry.

89.    Defendants called Plaintiff's DNC-registered telephone at least five times within a twelve-month period without having their prior written consent to do so and without an established business relationship.

90.    The foregoing acts and omissions of Defendants and/or their agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do-Not-Call Registry. 47 C.F.R. § 64.1200(c)(2).

91.    Defendants' calls were made for a commercial purpose.

92.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

93.    If the Court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

94.    Plaintiff also seeks an injunction prohibiting Defendants and their agents from making telemarketing solicitations until such time they have established processes and controls to prevent to residential and wireless telephone numbers listed on the Federal Government's National Do-Not-Call Registry.

### Count Three

95.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

COMPLAINT- 14

96.    The forgoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making at least five calls to Plaintiff's cellphone for non-emergency purposes, to the telephone number(s) of Plaintiff using an ATDS.

97.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an ATDS in violation of the statute, each and every call made to his cellular phone pursuant to 47 U.S.C. § 227(b)(3)(B).

98.    Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

99.    If the Court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

100.    Plaintiff also seeks injunction prohibiting all telemarketing calls from defendants and their agents until such time they have established processes and controls to preventing all calls using ATDS to all numbers protected by the TCPA without prior consent.

### **Count Four**

101.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

COMPLAINT- 15

102.   By placing at least five calls to the Plaintiff's mobile phone the Defendant violated A.R.S § 44-1278 (B)(3). By their use of "any automatic terminal equipment … excludes calls to the following telephone numbers without … d) The telephone numbers maintained on a no call list …". A.R.S § 44-1278 (B)(5).

103.   By placing at least five calls to a number already on the national Do-Not-Call list, the defendant violated ARS 44-1282 (A), and are subject to a civil penalty not to exceed $1000 per violation. ARS 44-1282 (B).

## Count Five

104.   Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

105.   By placing at least five telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, failing on at least two occasions to properly identify the caller of the company, Defendant(s), jointly and severally, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

106.   As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages pursuant to 47 U.S.C. § 227(b)(3)(B).

107.   If the Court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

108.   Plaintiff also seeks an injunction prohibiting all telemarketing calls from Defendants until such time that Defendants and their agents have implemented processes

COMPLAINT- 16

and controls to ensure no telemarketing calls are made to numbers contained on the National Do-Not-Call list without prior express permission.

### Count Six

109.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

110.    47 C.F.R. 64.1200(d)(1) requires that Defendants maintain a written telemarketing policy, available upon demand, for maintaining a do-not-call list.

111.    Defendants failed to fulfill this requirement, resulting in violations against Plaintiff.

112.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

113.    If the Court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

114.    Plaintiff also seeks an injunction prohibiting all telemarketing calls from Defendants until such time Defendants have trained all employees and their agents on the existence and usage of Defendants' internal do-no-call policy, and established processes and controls to insure all future employees are trained on the existence and usage of said policy, and processes and controls are established ensuring employees are able to make said policy available upon demand.

### Count Seven

115.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

116.    47 C.F.R. 64.1200(c)(1) prohibits Defendants train their personnel engaged from telemarketing outside the hours of outside " 8 a.m. or after 9 p.m".

117.    Defendants did not do so, resulting in violations against Plaintiff.

118.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

COMPLAINT- 17

119.   If the Court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

120.   Plaintiff also seeks an injunction prohibiting Defendants and their agents from making any telemarketing calls until such time they have implemented controls preventing any telemarketing outside the hours of 8 a.m. or after 9 p.m.

## Summary fo Counts

121.   By placing at least five telemarketing calls to the Plaintiff, whose cellular phone number used for residential purposes is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, and making at least one call with a prerecorded voice Defendants, jointly and severally, violated 47 U.S.C. § 227, 47 C.F.R. § 64.1200, and ARS 44-1282 (A).

## Relief Sought

WHEREFORE, Plaintiff requests the following relief:

A.   An order declaring that Defendants' actions, as set out above, violate the TCPA;

B.   An order declaring that Defendants' actions, as set out above, violate the TCPA willfully and knowingly, and an award trebling statutory damages;

C.   An order declaring that Defendants' actions, as set out above, violate the 227(c) of the TCPA;

D.   An order declaring that Defendants' actions, as set out above, violate the 227(d) of the TCPA;

E.   An order declaring that Defendants' actions, as set out above, violate 47 C.F.R. § 64.1200(c)(1);

F.   An order declaring that Defendants' actions, as set out above, violate 47 C.F.R. § 64.1200(d)(1);

COMPLAINT- 18

G.   An order declaring that Defendants' actions, as set out above, violate 47 C.F.R. § 64.1200(d)(2);

H.   An order declaring that Defendants' actions, as set out above, violate A.R.S. § 44-1282 (B).

I.   An injunction prohibiting Defendants and their agents from making telemarketing solicitations until such time they have established processes and controls to prevent to residential and wireless telephone numbers listed on the Federal Government's National Do-Not-Call Registry

J.   An injunction prohibiting all telemarketing calls from Defendants and their agents until such time they have established processes and controls to preventing all calls using ATDS to all numbers protected by the TCPA without prior consent;

K.   An injunction requiring Defendants and their agents to cease all unlawful calls without first obtaining the call recipients' express consent to receive such calls;

L.   An injunction prohibiting all telemarketing calls from Defendants and their agents until such time that Defendants have implemented processes and controls to ensure no telemarketing calls are made to numbers contained on the National Do-Not-Call list without prior express permission;

M.   An injunction prohibiting all telemarketing calls from Defendants until such time Defendants have trained all employees and their agents on the existence and usage of Defendants' internal do-no-call policy, and established processes and controls to insure all future employees are trained on the existence and usage of said policy, and processes and controls are established ensuring employees are able to make said policy available upon demand;

N.    An injunction prohibiting Defendants and their agents from making any telemarketing calls until such time they have implemented controls preventing any telemarketing outside the hours of 8 a.m. or after 9 p.m.;

O.    Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) or 47 U.S.C. § 227(c)(5);

P.    Because of Defendants' violations of the A.R.S. § 44-1282, Plaintiff seeks for civil penalties of $1000 in damages for each violation, pursuant to A.R.S. § 44-1282 (B);

Q.    An award of reasonable fees and costs;

R.    Such other and further relief that the Court deems reasonable and just.

RESPECTULLY SUBMITTED on this February 5, 2023.

Jason Crews

COMPLAINT- 20